GERTRUDE COHEN *v.* PENNSYLVANIA CASUALTY COMPANY

[No. 20, April Term, 1944.]

*Decided June 13, 1944.*

342

The case was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Albert H. Frankel* and *William Saxon*, with whom was *Harold Lee Frankel* on the brief, for the appellant.

*Joseph Sherbow* and *Roszel Thomsen* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case was heard by the Baltimore City Court without the intervention of a jury, and a judgment was given in favor of the defendant for costs, from which the plaintiff took an appeal here. It appears from the record that on September 4th, 1940, the plaintiff, now the appellant, was run into and injured in Maryland by an automobile truck owned by a certain Daniel S. Silvia of Charleston, South Carolina. The accident occurred in the City of Baltimore, suit was instituted against Silvia in the Baltimore City Court, and on November 10th, 1941, a judgment was rendered in favor of the appellant against Silvia for $5,000 as a result of a judgment by default and an inquisition by a jury. This judgment was not paid, and a writ of fi. fa. was issued, and returned "*nulla bona.*" Thereafter the appellant sued the appellee, claiming that on the date of the accident, there was in force a policy of insurance issued by the appellee, whereby Daniel S. Silvia was insured against liability for bodily injury occurring under circumstances such as did that of the appellant. The appellee filed a general issue plea and three special pleas. The third plea was to the effect that the policy of insurance referred to in the declaration had been cancelled before the date of the alleged accident, and was not then in full force and effect. This was the question upon which the trial judge decided the case in favor of the appellee.

The uncontradicted testimony shows that Silvia was generally engaged in buying and selling produce and in trucking. A truck, driven by one of his employees, went north through Maryland on September 4th, 1940, and had the accident. This truck was going for a load of potatoes which Silvia was buying in New Jersey, and which he intended to resell for his own account. It was empty when the accident happened. Silvia carried a policy of insurance with the Pennsylvania Casualty Company, which he and the appellee had cancelled as of the 31st of August, or the 1st of September, a few days before the accident. Silvia stated that he cancelled it because his occupation was seasonal, and September and October were off season. The policy was cancelled by agreement, and a large unearned premium credited to Silvia. The insurance company was not notified of the accident, because Silvia thought he had no insurance. He did not operate under the Interstate Commerce Commission, and had no operating license outside of South Carolina. He had to have a policy to operate under a Public Service License in South Carolina, and when he took out the policy, he had the Public Service Commission of South Carolina notified, and had an endorsement placed on the policy to assure compliance with the South Carolina law. His season was from November to April, and then his trucks traveled out of the state daily. This continued until June. In July and August he operated his trucks for himself and not for hire.

The policy is in the record, and by its terms applies only to accidents which occur while the automobile is owned, maintained, and used for the purposes stated as applicable in the declarations. These accidents are geographically limited to the United States, exclusive of Alaska, and to the Dominion of Canada. The purposes are stated as pleasure and business. It is provided that the policy may be cancelled by either party by written notice. The policy in this case was not cancelled in the way mentioned, but was cancelled by joint agreement. The South Carolina Code of 1932, Section 8511, requires

a policy for public liability where motor vehicles are operated under a certificate of public convenience and necessity issued by the Public Service Commission. In order to comply with this section, an endorsement was placed upon the policy making it comply with the South Carolina law. This endorsement contains a statement that the liability of the company extends to injuries whether occurring on the route and in the territory authorized to be served by the insured, or elsewhere in the State of South Carolina. There is also a provision that the endorsement may not be cancelled without cancellation of the policy, and such cancellation may be effected by the company or the insured by giving thirty days' notice in writing to the Public Service Commission of South Carolina. This notice was admittedly not given. It is agreed that the endorsement is in accordance with the General Rules and Regulations issued under the South Carolina Motor Vehicle Carriers Law.

The South Carolina statute obviously could not operate without the limits of that state. It could, although it did not, require a general coverage policy before a certificate of public convenience and necessity would be issued. Silvia's policy itself, if in force, operated anywhere in the United States. The appellee claims that, while the endorsement was not cancelled in accordance with the South Carolina statute, the only effect of such failure was to keep the policy in force in the State of South Carolina. The policy itself, which might have covered this accident, had it been in force, it claims, was lawfully cancelled by mutual consent prior to the time of the accident. The Maryland Financial Responsibility Law, Section 182 of Article 56, as it was in force on the date of the accident, applies only to motor vehicles used or to be used in the transportation of passengers or property for hire. The Maryland statute also provides that no cancellation shall be valid unless the Commissioner of Motor Vehicles is notified thirty days before the expiration date. No notice of such cancellation was ever given to the Commissioner of Motor Vehicles, but the appellee

claims that, as the truck in question was not being used for hire, it did not come within the provisions of the Maryland act, and, therefore, the policy is not to be construed under its terms, and no notice of cancellation in Maryland was necessary. The court below upheld the contentions of the appellee. The appellant contends, on the contrary, that the agreement of cancellation was ineffective as to any of the policy, because the South Carolina endorsement could not be cancelled in that way, that the whole contract of insurance, policy and endorsement, was a single one, and that as the loss was within the coverage contained in the policy, the appellee is liable. The first question, therefore, to consider is whether the attempted cancellation of the policy was effective, except as within the State of South Carolina.

The appellee agreed with the insured, on April 20, 1940, to pay on behalf of the latter, damages for bodily injury imposed on him by law caused by accident arising out of the ownership of his automobiles, one of which was that involved in this accident. The agreement is embodied in what is called a National Standard Automobile Policy, and was to expire on April 20, 1941. Except as to rights acquired by persons injured while the policy was in force, there was nothing in it to prevent the parties to it, i. e., the insured and the appellee, from cancelling the policy at any time before it expired. That is what they did, according to the undisputed testimony in the record. On August 31st, 1940, the insured, Silvia, executed a release to the appellee, certifying that the policy had been lost, mislaid, or destroyed, and the insurance having been cancelled, he released the company from any liability. The insurance company's record shows that the actual cancellation took place on September 1, 1940, and that a return premium of $886.20 was credited to the insured.

On the same date on which the policy was issued, there was attached to it, and made a part of it, the endorsement which amended the policy to assure compliance with the South Carolina law. This endorsement applied only to

damages resulting from the use of motor vehicles under a certificate of public convenience and necessity issued by the Public Service Commission of South Carolina on the route or in the territory authorized to be served or elsewhere in the state. There is a provision that the insured agreed to reimburse the company for any payment the company would not have been obligated to make under the policy, except for the agreement contained in the endorsement, and there is the further proviso, heretofore mentioned, that the endorsement cannot be cancelled without cancelling the policy. Such cancellation may be effected by either the company or the insured giving thirty days' notice to the Public Service Commission of South Carolina. The effect of this endorsement, of course, was to make the policy one given under the South Carolina Motor Vehicle Carriers Law. It appears that no routes or territory had ever been authorized for the insured by the Public Service Commission of South Carolina, but as the accident did not occur in that state, it is not necessary to pass on what effect that might have upon the liability of the appellee in case of an accident there. In South Carolina, the policy and its endorsement would be construed as a compliance with the statute, and as in Maryland, if there were conflict, the statute would control. *Brownlee v. Charleston Motor Exp. Co.,* 189 S. C. 204, 200 S. E. 819; *Keystone Mut. Casualty Co. v. Hines,* 180 Md. 676, 26 A. 2d 761, and cases there cited. That, however, only applies within the limits of the state which has enacted the statute. Such a statute cannot have an extra-territorial effect, and if the policy is broader than the statute, as in the case before us, and covers accidents occurring anywhere in the United States, except Alaska, and in Canada, its construction, outside of the state, depends on the terms of the policy itself. The reason for this is that the policy itself is a simple contract between the parties, and they are bound by its terms, but when it is made to serve, in a particular state, as a policy issued under a compulsory insurance law, then the public in that state have an interest in it. It is then

presumed to be issued with the knowledge of what is required for the protection of that public, and that knowledge, therefore, in any particular state, is read into such a policy.

In the case before us, as we have noted, the South Carolina law does not broaden the policy, nor does it restrict it. Its effect, when the policy was in force, was that the insured was not only covered in South Carolina, as required by the statute of that state in certain kinds of operations, but he was covered as to other operations in that state, and in other states as well. When he and the company attempted to cancel the policy, they did not file any notice of cancellation as required by the endorsement, so that clearly that part of the policy, which was required under the South Carolina law, remained in force. The public interest and the public necessity demanded that, but the public interest and the public necessity did not require the continuation of other parts of the policy applying elsewhere, or covering a broader liability. There seems to be no good reason why the insured and the company cannot terminate at will that part of their contract, and we agree with the court below, that they did so terminate if either on August 31st or at least on September 1st, which was the date on the appellee's books.

It is frequently the case that insurance policies cover two classes of insurance, namely, the compulsory insurance required by the statute of a particular state, and general insurance, good everywhere, or good for other purposes than those required by the statute. In the case before us, we have the general insurance contained in the policy, and the compulsory insurance provided in the endorsement. It is just as usual, and perhaps more so, to find the policy written to accord with the statute, and an extra-territorial rider attached. In a case of the latter nature, an insurer in Massachusetts extended his liability under a policy given to comply with the compulsory insurance law there by attaching a clause, which insured the policyholder for damages on account of in-

juries suffered from accidents occurring within the limits of continental United States of America by reason of the operation, maintenance, and use of his motor vehicle. The coverage description in the compulsory insurance clause was different from that in the extra-territorial clause. An accident occurred outside of Massachusetts, and suit was brought for consequential damages to parents arising from bodily injuries sustained by their children. The Massachusetts court concluded that the wording of the compulsory insurance clause did not include such coverage, but that the extra-territorial insurance was not so limited, and in so doing said: "The policy comprehended two distinct kinds of insurance. The first was specifically stated to be the compulsory insurance required by the statute as a condition precedent to the registration of the motor vehicle in this commonwealth. The second was not required by any statute but was a purely voluntary contract of insurance relating to accidents occurring in certain territory outside of this commonwealth. Instead of making separate contracts of insurance, the parties chose to embody both kinds of insurance in one policy. The separate provisions must be construed with respect to particular insurance provided. The circumstance that both kinds of insurance are combined in one policy does not narrow, nor enlarge, nor change the rules of construction which would be applied to the different kinds of insurance if they had been embodied in separate policies." *Cormier v. Hudson,* 284 Mass. 231, 187 N. E. 625, 626. The same rule was adopted in Rhode Island. A resident of Massachusetts had statutory coverage, and also extra-territorial coverage in the same policy. As he did not pay the premium, the insurance company cancelled the entire policy. The insured complained to the Insurance Commissioner, and when the Board of Appeal, provided for such cases, ordered the statutory coverage cancelled, an appeal was taken by the insured to the Superior Court. Pending such appeal, the cancellation of the statutory coverage was suspended. During the period after the company had can-

celled the policy, and before the Superior Court had heard the appeal, the truck of the insured injured someone in Rhode Island, and a judgment was obtained against the insured. The court said that the extra-territorial part of the policy was cancelled, and the statutory part was not. As the accident occurred outside of Massachusetts, the insurance company was not liable. *Baranski v. Massachusetts Bonding & Insurance Co., R. I.*, 197 A. 390. The general principle that two kinds of insurance may be carried in the same policy was also applied in the case in the Circuit Court of Appeals of the Eighth Circuit of *Hawkeye Casualty Co. v. Halferty*, 131 F. 2d 294, 297. "No reason appears why a common carrier operating motor vehicles in Missouri might not, after complying with the laws of Missouri in reference to insurance, applicable to its business, carry such other and further insurance as it deemed wise, or necessary to its protection." The same view was taken by the District Court of the Northern District of West Virginia in a very recent case. Actions were instituted against the insured to recover damages for death and injury to passengers in his truck. The insured was a common carrier. As such, under the laws of West Virginia, he had to file insurance with the Public Service Commission, covering injuries resulting from the use of motor vehicles under a certificate or permit issued to him as such common carrier. He received a policy, which, by its general terms, excluded hazard to passengers. The parties injured were passengers at the time of the accident. The endorsement required by the Public Service Commission included passengers. The contention was made that, under this endorsement, the plaintiffs could recover against the insurance company. The court, however, found that the truck was not being used under the common carrier permit at the time of the accident. The general provisions of the policy were, therefore, applicable, and not the statutory endorsement. *American Casualty Co. v. Morris*, 51 F. Supp. 889. See also *Appleman* on *Insurance Law and Practice* (1941 Ed.), Vol. 8, Sec. 5013; *Blashfield Cyclo-*

*pedia of Automobile Law and Practice,* Perm. Ed., Sec. 3992, Vol. 6, page 362; *Souza v. Car & General Assur. Corp.,* 281 Mass 117, 183 N. E. 140; *Travelers Mutual Casualty Co. v. Thornsbury,* 276 Ky. 762, 125 S. W. 2d 229.

The appellant contends that the liability of an insurer under a compulsory state law may be extra-territorial, and cites two cases involving a policy issued to the owner of a passenger bus in the State of Oklahoma. One of these cases was that of *Utilities Ins. Co. v. Potter,* 188 Okl. 145, 105 P. 2d 259, and the other, decided in the Circuit Court of Appeals for the Tenth Circuit, which included Oklahoma, was *Utilities Ins. Co. v. Smith,* 129 F. 2d 798. It appears from these cases that the insured held a certificate issued by the Corporation Commission of Oklahoma as a class B motor carrier. He agreed to take the Oklahoma University band for a considerable trip through various states to Washington, D. C., and then back to Oklahoma, but by the terms of the contract for the trip, the insured had to furnish the kind of insurance required under his permit. Under the general terms of the policy of the insured which had been filed with the Corporation Commission of Oklahoma, the company insured against loss within the limits of the United States, except Alaska and the island possessions. It was contended that the liability of the insurance company extended only to the use of the motor vehicle, while operating under a certificate of convenience, which certificate authorized only the transportation of passengers to and from points in the State of Oklahoma. The Oklahoma statute, however, to which the court restorted to determine the extent of the liability of the policy, required coverage for injuries due to any accident resulting from the operation of such motor carrier, for which injuries such motor carrier might be legally liable. The state, therefore, in that case, had required as a prerequisite to granting a certificate, a policy containing general coverage, so the question there was not a question of a difference between the statute and the policy. The

statute and the policy agreed on general coverage. The insured was liable under his policy. Such a case is clearly distinguished from the one before us, because the South Carolina statute does not require general coverage. The general coverage in Silvia's policy was, therefore, not kept alive by the statute, and was cancelled when the parties mutually agreed to the general cancellation of the policy.

We, therefore, hold that the appellee is not liable under the general coverage clause in its policy, because it was cancelled before the accident. And it is not liable under the South Carolina endorsement, because that is restricted to accidents happening in that state. It remains to be considered whether there was anything in the Maryland law which kept alive any part of the policy, and thereby rendered the appellee responsible.

The applicable Maryland law providing for insurance for commercial motor vehicles, which was in force at the time of this accident (although since repealed and re-enacted by the Act of 1943, chapter 1007) is contained in Flack's Annotated Code, 1939, Article 56, Section 182. It provides that no owner of a commercial motor vehicle shall permit such vehicle to be operated over the public highways of the state without a permit from the Commissioner of Motor Vehicles. The latter shall not grant such permit until the owner shall have provided good and sufficient security for the protection of the public. This may be satisfied by filing a certified copy of the insurance policy required. The term "commercial motor vehicle" is defined in this section as including all motor vehicles, except those running upon rails or tracks, "used or to be used in the transportation of passengers or property for hire". The required insurance policy is to insure the owner against any judgment which might be recovered for personal injury to any person other than passengers up to certain financial limits. There is a further provisio that any cancellation or annulment of the policy shall be void unless the Commissioner of Motor Vehicles is notified by the insurer thirty days before the effective

date of such cancellation, and if any policy certified under this law shall expire, the Commissioner shall be notified thirty days before the expiration date, and until such notice is given, such policy shall continue to be in force. When any policy has been cancelled the permit of the owner shall be revoked, unless another policy is secured, and a certified copy filed. There are penalties provided for any person violating the provisions of the section. There is also a proviso which considerably reduces the penalties in case there is failure to have secured from the Commissioner of Motor Vehicles the certificate showing that the motor vehicle is properly covered by the required insurance, but said vehicle is actually covered by such insurance.

This last proviso seems to refer to such a situation as would have existed had Silvia, the insured in the instant case, operated his trucks for hire in Maryland prior to the attempted cancellation on September 1, 1940. In such case he would have had the required insurance, although he had never gotten a certificate from the Commissioner of Motor Vehicles. *Keystone Mut. Casualty Co. v. Hinds,* 180 Md. 676, 26 A. 2d 761. His policy contained a clause making it conform to the financial responsibility laws of any states which might be applicable. It might be argued with considerable force that if he had operated the trucks insured under his policy for hire on the highways of Maryland during the period in which the policy was admittedly in force, then such policy, in so far as the State of Maryland was concerned, became impressed with all the provisions of the Maryland law, although no copy had been filed with the Commissioner of Motor Vehicles. And as a result it could not after such operation be cancelled as to operations in Maryland for hire, without giving the thirty days' notice required by the Maryland law. We are, however, not enabled to decide this question, because there is no evidence whatever in the record that any of Silvia's trucks had ever operated in Maryland during the period prior to September 1, 1940, when the policy was in force. His policy would only be

kept in force in Maryland if it was in existence at the time of an operation here and then only by the statute for the purposes of the Maryland law, which was to protect the public from damages inflicted by vehicles operated in Maryland for hire.

The appellant claims that even though at the time of the accident, the vehicle was not being used for hire, it was maintained by the insured for that general purpose, and, therefore, comes within the coverage of that portion of the policy which would be in force under the Maryland statute. In that connection appellant cites a number of cases tending to show that where the general use was commercial, slight deviations would not be held without the intent of the insurance contract. Among these are *Rusch v. Mielke,* 234 Wis. 380, 291 N. W. 300, *Terrast v. Peirce,* 304 Mass. 409, 23 N. E. 2d 871, *Behaney v. Travelers Insurance Co.,* 121 F. 2d 838. Such cases have no application here, even were we disposed to broaden the words "used or to be used * * * for hire" contained in Article 56. At the time of the accident, which was the only time the insured's truck was ever shown by the evidence to have been in Maryland, the insured had no policy to be construed under the Maryland statute. The part of his policy still in force was that which applied only to accidents occurring in South Carolina. That was kept in force solely because of the South Carolina statute. The Maryland legislature could not extend a policy, restricted to another state, and put it in effect here. In order to read the statute of Maryland into a policy of insurance the parties must have contracted for a policy which covered operations in Maryland. Then if an accident occurred here and the policy was in force the presumption would arise that it was issued with knowledge of the Maryland requirements and such requirements would be read into it. But there must be a policy in existence. In the instant case, on the date of the accident, there was no such policy. We cannot create a contract to bind the appellee.

354

There are other questions in the case which, in view of our conclusions, it is not necessary for us to pass upon. One of these, which we have considered, is the admissibility of certain certificates with respect to policies on other South Carolina vehicles, which were filed with the Commissioner of Motor Vehicles by the appellee. The appellant claims these certficates show that policies similar to the one in question here were considered by the appellee as complying with the Maryland law. We do not understand that is contradicted, if the policies are in force, and the certificates are filed. No certificate was filed on the policy in this case in Maryland. If any inference could be drawn from these certificates, it might be that which the trial judge suggested, that it would indicate that the appellee did not intend the policy in this case to operate under the Maryland law. It could not reasonably be inferred from the fact of their filing that the policy in question here was in force in Maryland. There is very little, if any, probative value in the certificates, but we have considered them in arrising at our decision.

We conclude on the whole case, that the policy of insurance was validly cancelled except in the State of South Carolina prior to the time of the accident, and that there was at the time of the accident, no insurance on which the appellee was liable for damages arising therefrom. The judgment of the court below, therefore, will be affirmed.

*Judgment affirmed, with costs.*