## CITIZENS CASUALTY COMPANY OF NEW YORK v. ALLIED MUTUAL INSURANCE COMPANY

[No. 273, September Term, 1957.]

(Two Appeals In One Record)

*Decided June 18, 1958.*

*Motion for rehearing or, in the alternative, for modification of opinion filed June 27, 1958; motion for rehearing denied, motion for modification granted, and opinion modified July 17, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David K. Ebersole, Jr.,* and *Leroy W. Preston,* for appel-
lant.

*Harrison L. Winter,* with whom was *Benjamin C. Howard*
on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy between two insurance companies as
to which of them should bear the loss, or whether they should
bear equally the loss, resulting from an automobile accident.
Each of them had issued an automobile insurance policy in
substantially identical form affording personal injury and
property damage liability coverage. While both policies were
in force one Thomas Flynn, when driving an automobile
owned by his wife, became involved in an accident in which
several persons were injured ·and property damage was
caused to another. Mr. Flynn was the party at fault. He
was covered by each insurance policy at the time of the acci-
dent. The questions presented are whether one policy con-
stituted primary insurance and the other excess insurance
and, if so, which one; and if not, whether the loss should be
prorated (in this case divided evenly) between them. The
case was tried on stipulated facts before the court, without
a jury. The trial court held that the loss should be prorated
and accordingly entered a judgment for Allied Mutual Insur-
ance Company ("Allied"), the plaintiff, against Citizens
Casualty Insurance Company of New York ("Citizens"),
the defendant, for one-half of the aggregate amount which
Allied had paid out in satisfaction of a judgment for prop-
erty damage and in settlement of personal injury claims of
third parties arising out of the accident and for costs and
expenses of investigation and defense. The final judgment
also included interest and costs. The total amount was within
the limits of each policy.

The case involves the construction of the policies and of
the Motor Vehicle Financial Responsibility Law (sometimes

referred to below as the "Act"), which is now contained in Sections 116-149, inclusive, of Article 66½ of the 1957 Code. All references to Sections thereof will be to their 1957 numbering in Article 66½, and references simply to numbered Sections will be to Sections of that Article.[1]

Thomas Flynn had a bad driving record involving one or more unspecified convictions for violation of the Motor Vehicle Law. Consequently, he was required under Section 118 to furnish evidence of financial responsibility in order to reinstate his right to operate a motor vehicle. He elected to do so in one of the three ways authorized by Section 130 by furnishing a policy of insurance. To do this, he obtained a policy from Citizens and filed with the Department of Motor Vehicles (the "Department") a certificate of such insurance furnished by Citizens. This certificate was on a form prescribed by the Department known as S R 22. The policy was issued to Thomas Flynn and covered the period from March 3, 1954, to March 3, 1955. It furnished insurance against liability under "Coverage A" for personal injury or death to the extent of $10,000 as to one person and of $20,000 as to two or more persons in any one accident, and under "Coverage B" to the extent of $5,000 for damage to the property of others in any one accident. These kinds and amounts of coverage were in accord with the minima required by the Act (Sec. 122). This policy applied to such liabilities caused by accident and arising out of the ownership, maintenance or use of a certain 1951 Chevrolet automobile owned by and registered in the name of Thomas Flynn. It also contained a so-called "omnibus clause" as to persons covered and provisions extending coverage of certain insured persons in their use of other automobiles subject to conditions in case of there being other insurance. These will be referred to below.

Mrs. Flynn owned a 1941 Plymouth automobile, and she

---

1. So far as this case is concerned, there is no material difference between the provisions of the Act contained in the 1957 Code and those in force at the time of the accident giving rise to this suit. It occurred on January 2, 1955.

took out a policy with Allied covering the period from September 15, 1954, to September 15, 1955.

Apart from such differences as those in names, dates and vehicles covered, the Citizens and Allied policies here involved were actually or substantially identical in all terms relevant to this controversy. Each afforded the same coverage as to bodily injury (Coverage A) and property damage (Coverage B). Each contained in "Insuring Agreement III" an omnibus clause providing in part: "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and * * * any person while using the automobile [described in the policy] * * *, provided the actual use of the automobile is by the named insured or with his permission." Mr. Flynn was using Mrs. Flynn's car with her permission at the time of the accident.

Each policy also contained a clause designated as "Insuring Agreement V," headed "Use of Other Automobiles," reading in part as follows: "If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy with respect to said automobile applies to any other automobile subject to the following provisions: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured [and] (2) the spouse of such individual if a resident of the same household * * *. Insuring Agreement III, Definition of Insured, does not apply to this insurance." (Paragraph (b) contains exceptions not here relevant.)

Each policy also contained a condition (No. 4 in Citizens' policy, No. 8 in Allied's) entitled "Financial Responsibility Laws" relating to Coverages A and B stating in part that: "Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership,

maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy."

Condition 12 of the Citizens Policy is entitled "Other Insurance" and has the sub-heading "Coverages A and B." It reads as follows:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

The corresponding provision of Allied's policy (Condition 18) is virtually identical, except that it applies to more coverages.

Condition 14 of Citizens' policy provides for subrogation of the insurance company to all rights of recovery of the insured in respect of payments made under Coverages A and B. Condition 17 of Allied's policy is similar, but also applies to other coverages not here involved.

Section 122 is rather long. It starts out with provisions for the suspension by the Department of Motor Vehicles (the "Department") of the license of the operator and of the registrations of the owner of motor vehicles involved in accidents in this State unless the operator or owner, or both, deposit security to cover judgments which may be rendered against them as a result of such accidents, and also furnish proof of continuing financial responsibility for the future. Then come provisions stating that this section shall not apply: (1) to

an operator or owner of a motor vehicle involved in an accident if the owner had in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved; or (2) to the operator, if not the owner, of such a vehicle if he had an automobile liability policy or bond in effect at the time of the accident with respect to his operation of motor vehicles not owned by him; or (3) to the owner or operator of a motor vehicle if, in the judgment of the Department, his liability is covered by any other form of liability insurance policy or bond. These provisions are followed by an unnumbered paragraph stating that "[no] * * * policy or bond shall be effective *under this section*" (italics supplied) unless it meets certain requirements. By inference from this negative statement, a policy or bond is sufficient to entitle an owner or operator to the exemption, if it does meet those requirements.[2] They are, in brief, that the policy or bond must be issued by an insurance company authorized to do business in Maryland (subject to exceptions not here relevant in the case of vehicles not registered in Maryland), that its limits for bodily injury or death must be not less than $10,000 for any one person and $20,000 for any one accident, and for property damage not less than $5,000. This Section also provides that immediately upon receipt of notice of the accident the insurance or surety company which issued the policy or bond shall file with the Department a written notice that such a policy or bond was in force at the time of the accident. In compliance with the last mentioned provision Allied filed with the Department a notice or certificate, on a form approved by the Department known as

---

2. Neither the use of this negative form of expression nor the use of the words "under this section", instead of some such term as "for exemption from the operation of the first paragraph of this section", is an aid to clarity. Logically, it would seem that the construction placed upon this negative statement in Section 122 might be extended to cover the first paragraph of Section 122, which is certainly a part of "this section". So to extend it would, however, seem to run counter to Section 131, which is expressed as applicable to insurance policies "offered as proof of financial responsibility under this article" and hence is applicable to the first paragraph of Section 122, as well as to Section 118.

S R 21, with regard to the accident in which Mrs. Flynn's car was involved while being driven by Mr. Flynn. (There are other provisions of Section 122 dealing with self-insurers, and Section 123 sets forth several exceptions from the requirements as to security and suspension in Section 122. None of these are relevant here.)

The requirements above stated which an insurance policy must meet in order to qualify for the exemption from suspension of licenses and registrations under Section 122 are less in a number of respects than those set forth in Section 131 with regard to insurance policies offered as proof of financial responsibility; but the minimum coverages required for the exception under Section 122 and as proof of financial responsibility under Section 134, which supplements Section 131 as to this important matter, are the same.

Section 131 deals with policies of insurance offered as proof of financial responsibility. It provides in part that a "policy or policies of insurance shall provide insurance, in the name of the person insured, to apply to all motor vehicles owned by the person insured; and in addition thereto shall provide insurance, in the name of the person insured, to apply to any motor vehicle operated by, but not owned by the person insured."

Subsection (a) of Section 131 states that "[s]uch policy of insurance shall meet the requirements enumerated hereunder when" it contains specified provisions. These include: a description of the vehicles insured; the name, address and occupation of the person insured; a provision extending the insurance to any person using an insured vehicle, when such use is with the permission of the named insured; geographical coverage anywhere in the continental United States or Canada; a provision for "insurance for every insured person on account of legal liability for damages arising out of the ownership, operation, maintenance or use of any motor vehicle explicitly described * * * in the * * * policy;" and provisions under clause (6) (E) that "the insurance provided is in accordance with and subject to all the provisions of this article," and under clause (6) (F) that "the liability of the insurance carrier shall become absolute whenever loss.

or damage included in such policy occurs, and the satisfaction by the insured person of a final judgment for such loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of such loss or damage; provided that no suit shall be brought against the insurance carrier until thirty (30) days after the entry of a final judgment against the insured person for such loss or damage."

Subsection (b) of Section 131 enumerates various provisions which a policy *may* contain. Among them are several permitting the exclusion of some risks. Also, the policy may "[g]rant any lawful insurance in excess of that required in this article." The two most important of the permissive clauses, for purposes of this case, are numbered (5) and (7). Clause (5) permits "any agreement, provision or stipulation not in conflict with or contrary to the provisions required in this article and not otherwise contrary to law." Clause (7) permits "the prorating of the insurance thereunder with other applicable valid and collectible insurance."

The first question for determination is whether the Citizens policy is to be regarded as excess insurance and the Allied policy is to be regarded as primary insurance, or vice versa. If one constitutes primary insurance and the other excess insurance, we do not reach any question of contribution.

In *Celina Mutual Casualty Co. v. Citizens Casualty Co.*, 194 Md. 236, 71 A. 2d 20, the situation was like that in the present case to the extent that the two policies were in general similar to those here involved, that the accident occurred when a husband was driving his wife's car, and that the husband was enabled to retain his license to operate a motor vehicle only because he had furnished an insurance policy (issued, as it happened, by Citizens) meeting the requirements of the Act, and that each policy covered personal injury liability and property damage liability arising from the accident. However, the husband's policy was strictly an operator's policy (Section 140) and did not cover any specific automobile, because he did not own one. The wife had obtained a policy from Celina Mutual Casualty Company ("Celina") which covered her and her automobile. It con-

tained an omnibus clause defining "insured" like the omnibus clause (Insuring Agreement III) in the present case. Celina contended, as Allied does here on one phase of the case, that since the husband was allowed to drive a car only by virtue of the Citizens policy, Citizens' policy should be considered as primary insurance and Celina's policy only as excess insurance. This contention was rejected by this Court. The excess insurance provisions contained in the "Other Insurance" clause of the husband's policy issued by Citizens dealing with substitute vehicles and use of other automobiles were held inapplicable, because he owned no automobile. This Court then held that neither policy constituted primary insurance and neither constituted secondary insurance, that since each policy contained a *pro rata* clause, the liability of the two insurers was concurrent, and that the loss should be prorated between them.

The Celina case is controlling against Allied's contention that the policy issued by Citizens to enable Thomas Flynn to furnish the proof of financial responsibility under the Act should be regarded as primary insurance as between the Citizens and Allied policies.

Allied contends in support of the judgment holding Citizens liable for *pro rata* contribution that the excess provision in Condition 12 of the Citizens policy is void as being in conflict with Section 131 of the Act, because, Allied asserts, the permission granted by subsection (b) (7) of that Section to provide for *pro rata* insurance impliedly prohibits any provision by which the insurance furnished by a policy complying with Section 131 can be made excess insurance.

It is undisputed that a provision contrary to the Act is void. Section 131 (a) (6) (E); *Keystone Mutual Casualty Co. v. Hinds,* 180 Md. 676, 26 A. 2d 761; *Cohen v. Pennsylvania Casualty Co.,* 183 Md. 340, 38 A. 2d 86. It is also undisputed that "if insurance is *pro rata,* it cannot at the same time be excess insurance as to the same loss." *Consolidated Shippers v. Pacific Employers Insurance Co.,* 114 P. 2d 34, 36. (Cal.).

We have no doubt that under its policy and under Section 131 (a) (6) (F), the "absolute liability" clause, Citizens

could be held liable to any persons who recovered judgments against Thomas Flynn based upon his negligence in operating a motor vehicle while he was covered by the Citizens policy. We also think that Allied could similarly be held liable under its policy and under Code (1957), Article 48A, Section 83, to any persons who recovered judgments against Thomas Flynn for his negligence in operating a motor vehicle while he was an "insured" under the Allied policy. Cf. *Gorman v. St. Paul Fire & Marine Ins. Co.,* 210 Md. 1, 5, 121 A. 2d 812. Though there are some differences between Section 131 (a) (6) (F) of Article 66½ and under Section 83 of Article 48A of the 1957 Code, there is also considerable similarity between the rights of injured third parties to sue the insurer under these two sections. Section 83 of Article 48A was first enacted in 1924, some nineteen years before the Motor Vehicle Safety Responsibility Act. Each of these statutes has a remedial purpose. That purpose under the Safety Responsibility Act has been commented upon in *Keystone Mutual Casualty Co. v. Hinds, supra.* It is primarily to protect the public. See also *Farm Bureau Mutual Auto. Ins. Co. v. Violano,* 123 F. 2d 692, 696 (*C.C.A.* 2nd, 1941), and *Wilkins v. Inland Mutual Ins. Co.,* 253 F. 2d 489 (*C.A.* 4th, 1958) affirming the decision of Judge Thomsen reported in 148 F. Supp. 392.

Our view that the "absolute liability" under Section 131 (a) (6) (F) is to the members of the public who have suffered by reason of the insured's action is reinforced by the fact that the provision for absolute liability is coupled directly with the clause stating that satisfaction of a judgment by the insured person is not a condition precedent to the obligation of the insurer to make payment to the injured party. In other words, the insolvency or financial irresponsibility of the insured does not release the insurer from liability to injured third parties. (We may note that Section 83 of Article 48A, above referred to, contains a like provision.) The public liability nature of the policy is further emphasized by the provisions of Section 131 (d) prohibiting the cancellation by the insured and the insurer of a policy offered as proof of financial responsibility under the Act after the insured per-

son has become involved in an accident resulting in personal injury or property damage to others.

Though Citizens could not, because of Section 131 (a) (6) (F), set up against injured third parties, who are members of the public, a defense based upon its insurance being excess rather than primary insurance, this is not conclusive in the present controversy. This is not a suit by injured third parties on one side against one or more insurers on the other, but is a controversy between two insurers as to whether one or the other, or both of them, should bear the ultimate loss resulting from an accident caused by a person covered by their respective policies, where such loss includes, and consists chiefly of, the amounts paid to the injured third parties. The result of the *Celina* case seems quite inconsistent with any idea that one insurance company is a party sought to be protected, as a matter of legislative policy, by an insurance policy furnished by another insurance company pursuant to Section 118 and complying with Section 131.

Section 131 (b) (5) expressly permits a policy of insurance to contain any agreement, provision or stipulation not in conflict with or contrary to the provisions required by Article 66½ and not otherwise contrary to law. This clearly precludes the inference that only provisions specifically stated in subsection (b) are permissible under it. A provision that the insurance granted by a policy shall be regarded as excess insurance in respect of other valid and collectible insurance is nothing new or unusual. So long as the rights of injured third parties are not adversely affected, the remedial purpose of the Act is neither defeated nor impaired, and we see no reason why this provision should be regarded as in conflict with the Act or why its validity should be denied in a case such as this. On the contrary, we think it is a permissible provision under Section 131 (b) (5), and that it is valid as between the two insurers covering the risk here involved.

In view of our holding with regard to the excess insurance provision of the Citizens policy, we need not go into any question as to the scope or basis of the doctrine of contribution. We also agree with Citizens' contention that there is

no basis upon which Allied is entitled to subrogation against Citizens in this case. *Kenner v. Century Indemnity Co.,* 67 N. E. 2d 769 (Mass.).

> *Judgment reversed without a new trial on the appeal of Citizens Casualty Company of New York and judgment affirmed on the cross-appeal of Allied Mutual Insurance Company; the costs of both appeals to be paid by Allied Mutual Insurance Company.*