GALFORD *v.* NICHOLAS, ADMINIS-
TRATOR ET AL.

[No. 108, September Term, 1960.]

*Decided February 9, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William T. Pace,* with whom were *William H. McCullough* and *McCullogh & Pace* on the brief, for appellant.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff, Herbert A. Galford, appeals from a judgment of the Circuit Court for Montgomery County in favor of the sole appellee, National Indemnity Company, entered upon the appellee's motion for summary judgment. Galford was a

guest-passenger in an automobile owned and operated by one Hollis Lynn Nicholas. The car went off a road in Maryland and struck a tree. Nicholas and another occupant of the car were killed, and Galford was injured. He brought this suit in two counts: the first (not pertinent on this appeal), for damages due to alleged negligence of Nicholas, against his Virginia domiciliary administrator and his Maryland ancillary administrator; the second, for a declaratory judgment against Nicholas' administrators and also against National Indemnity Company (National), as Nicholas' insurer.[1]

Nicholas was a resident of Virginia, and in 1957 he was a minor. In that year he was twice convicted in Virginia of reckless driving, and, presumably because of those convictions, his license to operate an automobile was revoked for a year by the proper Virginia authority. (See Virginia Code,[2] Section 46.1-417.) On or about May 13, 1959, he obtained the reinstatement of his driver's license, as permitted by Virginia law, by furnishing proof of his financial responsibility. Such proof was furnished by a certificate issued by National showing that it had issued to Nicholas an operator's policy, dated May 12, 1959, and designated by its number, complying with the requirements of the Virginia Financial Responsibility Law. At that time Nicholas did not own an automobile. He acquired one early in June, and on his application stating

1. This count states that the plaintiff "is informed and believes" and therefore avers that if neither the estate of Nicholas nor the appellee insurance company pays any judgment which he may recover against Nicholas' estate, the Maryland Unsatisfied Claim and Judgment Fund Board will be liable for payment of his claim. The basis upon which his information and belief rests is not stated, and his declaration does not state facts showing that he would be a "qualified person" under Code (1957), Art. 66½, § 150 (g), to assert a claim against the Board. The second count thus suggests that the Board has an interest, but says that its "rights and remedies * * * are unknown." The Board is not joined as a party, and no point is made of its non-joinder. Since it is not a party, it will not be bound by any declaration herein. Code (1957), Art. 31A, § 11.

2. References to Title 46.1 and to section numbers thereunder of the Virginia Code are to those contained in the 1958 Replacement Volume superseding the 1950 Edition. Other references to titles and numbers are to the 1950 Code.

among other things that he was covered by liability insurance issued by National and referring to the above policy by number, he was issued a title therefor and registration tags by the Virginia Division of Motor Vehicles on June 4, 1959. No change was made in National's policy, no owner's policy was obtained, and no new certificate was filed by National. (We suppose that no check of National's certificate previously filed was made, though this is not stated.) The accident which killed Nicholas and another and severely injured Galford occurred in Maryland a little over a month later, on July 10, 1959.

The controversy here is whether National's operator's policy issued to Nicholas in Virginia pursuant to the Motor Vehicle Safety Responsibility Act of Virginia (referred to herein as the Virginia Financial Responsibility Law) does or does not afford protection to Galford for injuries sustained by him in an accident which occurred in Maryland when Nicholas was the driver of a car which he owned. The case involves the terms of National's policy and the Motor Vehicle Laws, particularly the Financial Responsibility Laws, of the two States.

The appellant contends that National's liability should be determined under the Financial Responsibility Law of Maryland. He starts with the proposition that an operator's policy offered to show proof of financial responsibility under the Maryland Law must cover any automobile operated by the insured, whether owned by him or not. For reasons stated below in comparing the Virginia and the Maryland Laws on this subject, we shall accept this proposition as correct. For this proposition to be of any avail to the appellant, however, it must be established that the Maryland Financial Responsibility Act does apply. This result might be reached on any of three possible grounds: (i) that the Virginia law under which the policy was issued and certified so requires; (ii) that the policy itself so provides; or (iii) that the Maryland Financial Responsibility Law itself can and does so require.

We shall turn first to the Virginia law since Nicholas had to furnish proof of financial responsibility to get his driver's license reinstated under Section 46.1-438 (b) of the Virginia

Code. One of the means of furnishing such proof under Section 46.1-468 is by proof that "[a] policy or policies of motor vehicle liability insurance have been obtained and are in full force and effect." Under the Virginia Financial Responsibility Law either of two types of policy is acceptable.

One is an owner's policy, which, under Section 46.1-504 of the Virginia Code, shall designate or accurately describe all motor vehicles with respect to which coverage is to be granted, and shall insure the named insured and any other person using any such vehicle with his permission "against loss from any liability imposed by law for damages, caused by accident and arising out of the ownership, use or operation of such motor vehicle or motor vehicles within this State [or] any other state in the United States * * * subject to a limit * * * with respect to each motor vehicle" of $15,000 for bodily injuries or death as to any one individual and $30,000 in any one accident and $5,000 as to property damage in any one accident.

The other acceptable type of policy is an operator's policy, which is described in Section 46.1-505 of the Virginia Code. Such a policy covers "damages * * * because of bodily injury to or death of any person and injury to or destruction of property arising out of the use by him [the insured] of *any motor vehicle not owned by him,* within the territorial limits and subject to the limits of liability set forth with respect to an owner's policy." (Emphasis supplied.)

A comparison of the Virginia Financial Responsibility Law with that of Maryland will show that the corresponding Maryland provision omits from the words above italicized "not owned by him." See Code (1957), Art. 66½, § 140, which reads as follows:

"When the person required to give proof of financial responsibility is not the owner of a motor vehicle, such person may give proof of financial responsibility as required by this article by means of an operator's policy of insurance, insuring such person in the operation of *any* motor vehicle." (Emphasis supplied.)

The difference between the two types of statute seems clear, and it has been recognized by the courts. Both North Carolina and South Carolina have had statutes of the same type as the Virginia Financial Responsibility Law, and they have been held not to require that the coverage under an operator's policy extend to motor vehicles *owned* by the insured. See *Booth v. American Casualty Co.*, 261 F. 2d 389 (C. A., 4); *Lynn v. Farm Bureau Mutual Automobile Ins. Co.*, 264 F. 2d 921 (C. A., 4), and cases therein cited. Such was also the law of Oregon, which (prior to 1955) had a statute like the Virginia statute. *Ohm v. Firemen's Fund Indemnity Co.*, 211 Or. 596, 317 P. 2d 575. As was said by Perry, C. J., in the latter case (211 Or. at 601): "The fact that an operator's policy is specifically referred to, distinctly and separately from an owner's policy, and the liability coverage for ownership is more extensive than that of a nonowner, shows conclusively that the legislature intended an operator's policy to retain its distinction, but still remain within the sanction of the Act as a whole."

An opposite result has been reached under the Maryland statute because of the obvious difference in language. See *Inland Mutual Ins. Co. v. Stallings*, 162 F. Supp. 713 (D. C., Md., Thomsen, C. J.), affirmed, 263 F. 2d 852 (C. A., 4, opinion by Sobeloff, C. J.). Judge Sobeloff clearly pointed out the distinction between the two types of statute in the *Inland* case. If further emphasis upon this difference were needed, it might readily be found in the fact that Judge Sobeloff also wrote the opinion in *Lynn v. Farm Bureau Mutual Automobile Ins. Co., supra.* The same construction of the Maryland statute was recognized by this Court, though such construction was not there contested, in *Liberty Mutual Ins. Co. v. American Automobile Ins. Co.*, 220 Md. 497, 499, 154 A. 2d 826.

In the instant case, an endorsement forming a part of National's policy headed "Non-Owner's Policy" thus stated an exclusion from coverage: "The insurance does not apply * * * as respects the named insured, to any automobile owned by the named insured." This exclusion from coverage under an operator's policy is expressly authorized by Virginia Code, Section 46.1-505 when such a policy (as distinguished from

an owner's policy) is offered or certified as proof of financial responsibility under the Virginia Financial Responsibility Act.

We find nothing in the Virginia statutory geographical coverage requirements applicable to such a policy to lead to a different conclusion. It would be a strange construction of those requirements to find in them an implied negation of what seems to us an explicit statement of a permissible exclusion.

Keeping the above endorsement in mind, we next examine Condition 9 of the policy (which is said to be a standard clause). Condition 9 reads, in pertinent part, as follows:

> "*Financial Responsibility Laws—Coverages A and B:* When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state *, such insurance as is afforded by this policy for bodily injury liability * * shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy."

The simple but salient fact is that National's policy was not certified as proof of financial responsibility under the law of Maryland. We find nothing in the Virginia law or in Condition 9 which reads or requires reading into the policy the terms of the financial responsibility law of any state other than Virginia—the state in which the policy was issued and in which it was certified to enable a resident of Virginia to comply with the Financial Responsibility Law of Virginia. An insurer's liability under an automobile liability policy is generally to be determined in accordance with the law of the place where the contract was entered into, *Cohen v. Penn. Casualty Co.,* 183 Md. 340, 38 A. 2d 86, and not of some other jurisdiction. It makes no difference, we think, that the law of Virginia or the terms of the policy might have made applicable to this policy the financial responsibility laws of any

state in which Nicholas might operate a motor vehicle, for neither of them did so.

Next we turn to the Maryland Financial Responsibility Law to see whether it undertakes to impose liability under a policy such as National's which has not been certified under the Maryland Financial Responsibility Law. Unless it does so, there is no need for our considering whether Maryland could make its Financial Responsibility Law applicable in a case such as this. (Cf. *Watson v. Employers Liability Corp.*, 348 U. S. 66.) We therefore look first to see what the Maryland law does or does not undertake to do in this regard.

In the first place, we do not find any ground upon which to hold that even if the Maryland Financial Responsibility Law were applicable, it would have required Nicholas to furnish proof of financial responsibility. It is true that Code (1957), Art. 66½, § 137, does make the provisions of that Article applicable to nonresidents. It further provides, among other things, that if a nonresident has been convicted of an offense which would require the suspension or revocation of the license of a resident, then such a nonresident shall not operate a motor vehicle in this State, nor shall any motor vehicle owned by him be operated here, nor shall the Department of Motor Vehicles issue to him an operator's license or register any motor vehicle owned by him unless and until he shall give proof of financial responsibility. Also, § 100 (a) of the same Article makes a nonresident's privilege of operating a motor vehicle on our highways subject to revocation or suspension "in like manner and for like cause as an operator's * * * license issued hereunder may be * * * suspended or revoked." § 104 (a) of Art. 66½ provides for the mandatory revocation of a driver's license upon the Department receiving an official record of a driver's conviction in this or any other State of certain enumerated offenses. There is nothing to show that Nicholas had been convicted of any of these. § 104 (b) of Art. 66½ provides for the mandatory suspension or revocation of the operator's license of any person under twenty-one years of age convicted in this State of two offenses (not arising out of the same incident) involving a motor vehicle actually in motion. If Nicholas' two convictions had occurred

in this State, § 104 (b) would have been applicable, but they did not occur here.

Whatever the reason for it may be, the difference in language between § 104 (a) of Art. 66½ as to convictions of offenses "in this * * * or any other State" and § 104 (b) as to "convictions within this State" is too marked to be ignored. We find no applicable provision of the Maryland Financial Responsibility Act which would have required Nicholas to furnish proof of financial responsibility.

In the next place, we find no indication in the Maryland Financial Responsibility Law that any nonresident who may have been required to furnish proof of financial responsibility under the laws of any other state shall agree—or that his insurer shall agree—that any liability policy so furnished must meet the requirements of the Maryland statutes as a condition to the nonresident being allowed to use Maryland highways or to the insurer being authorized (as National is) to do business in this State. The requirements of Art. 66½ of the Maryland Code (1957) relating to motor vehicle public liability and property damage insurance rest upon the definition of "[a] policy of insurance" contained in § 131 of that Article. The opening paragraph of that Section limits that definition, we think, to a policy of insurance "when offered as proof of financial responsibility under this article." § 135 (applicable generally) and § 141 (applicable to nonresidents) provide a method for the offering of proof of financial responsibility through furnishing a certificate of the "insurance carrier or surety company, as the case may be, that there has been issued a policy of insurance or a surety bond in accordance with the provisions * * *" of Article 66½. The appellee never certified the policy here involved to the Maryland Department of Motor Vehicles as evidence of Nicholas' financial responsibility, nor did it in any way induce that Department to restore Nicholas' privilege to drive in Maryland, assuming *arguendo* that that privilege had been revoked. Since the appellee's policy was never so certified and in the absence of any requirement that it be so certified, the Maryland Financial Responsibility Law does not undertake to impose any added or extended liability over and above that expressed in the policy.

See *Petrowski v. Hawkeye-Security Ins. Co.*, 237 F. 2d 609 (C. A., 7), cert den. 352 U. S. 972. In that case there was an exclusion of coverage as to certain persons operating an automobile owned by the insured, an Iowa resident, under a policy issued to him in Iowa to comply with the financial responsibility laws of that State. Such an exclusion was valid under Iowa law. It was held by a divided court not to be affected by the Wisconsin financial responsibility law when an accident occurred in Wisconsin while the car was driven by a person excluded from coverage, even though such an exclusion would have been void under the Wisconsin statute. The court held that since the policy had not been certified under the Wisconsin Act as evidence of financial responsibility, its terms could not be varied to conform to Wisconsin law.

See also, to the same effect, *New Zealand Insurance Co. v. Holloway*, 123 F. Supp. 642 (W. D., La.). There, as here, the contention was made that the so-called "absolute liability" clause of the motor vehicle financial responsibility law of the state where the accident occurred was applicable. The Louisiana absolute liability provision there involved (L. S. A.—R. S. 32:900, subd. F (1)) is very similar to that contained in Md. Code (1957), Art. 66½, § 131(a) (6) (F). The court said in that case (123 F. Supp., at p. 647): "We have been unable to find decisions by Louisiana courts or by federal courts sitting in Louisiana on the subject. We, therefore, turn to the jurisprudence of other states who have adopted the uniform Motor Vehicle Safety Responsibility Law. With but one exception, [N. H.], every other court in this country faced with the same issue has resolved it the same way, namely: that the Motor Vehicle Liability Act has no effect unless the policy was actually required and certified under the Act. It is our opinion that under the facts presented the courts of Louisiana would follow the overwhelming weight of authority. Accordingly, we conclude the law to be as follows: Under the Louisiana Motor Vehicle Safety Responsibility Act, providing that the liability of [an] insurance carrier with respect to insurance required, shall become absolute whenever injury or damage covered by a motor vehicle liability policy occurs.

Words 'motor vehicle liability policy' refer only to a policy which has been certified as proof of future financial responsibility as provided in the Act itself. The policy involved was not so certified and never came within the purview of the Act. The Act has no effect on policy defenses unless the policy was actually required and certified."

The appellant also makes an argument involving what is called estoppel which we find very difficult to follow, particularly in the terms in which it is introduced in his brief. This argument may be merely that the terms of a statute will prevail over inconsistent terms of a policy submitted as a compliance with the statute. For reasons already fully set forth, we find no basis here for such an argument. In a more usual meaning of the term "estoppel" we find nothing which the appellee insurance company did that might bar it from standing on the terms of its policy. It made no certification to Maryland; it made no untrue certification to Virginia. Nicholas seems to have made a less than full and correct statement with regard to his liability insurance when he was registering his automobile, but National was not a party to it. In fact, reference to National's certificate which was on file would have shown the nature of its policy.

Section 38.1-381 of the Virginia Code cited by the appellant at the argument in this Court does not seem to us of any significance in the determination of this case.

*Judgment affirmed, with costs.*