## 1412

The ORANGE BOWL CORPORATION, Respondent v. Robert L. WARREN, Lucy W. Warren, Kenneth L. Beiter, and Gloria Beiter, Defendants, of whom Lucy W. Warren, Kenneth L. Beiter, and Gloria Beiter are Appellants. Appeal of Lucy W. WARREN, Kenneth L. Beiter and Gloria Beiter.

(386 S. E. (2d) 293)

Court of Appeals

*Michael A. Molony, Stephen P. Groves,* both of *Young, Clement, Rivers & Tisdale, Jay T. Gouldon,* of *Stoney & Gouldon,* Charleston, and *James B. Richardson, Jr.,* of *Richardson & Smith,* Columbia, *for appellants.*

*Raymond S. Baumil,* of *Solomon, Kahn, Smith & Baumil,* Charleston, *for respondent.*

Heard Sept. 19, 1989.

Decided Nov. 6, 1989.

BELL, Judge:

Orange Bowl Corporation brought this action against Robert L. and Lucy W. Warren and Kenneth L. and Gloria Beiter to recover money allegedly due under a restaurant franchise agreement and a related lease.[1] The Beiters denied liability to Orange Bowl and cross claimed against Warren for indemnity. Warren also cross claimed against the Beiters for indemnity. The case was tried by the circuit court sitting without a jury. The court entered judgment for Orange Bowl against the Beiters and Warren in the sum of $18,982.90. The court then held that neither the Beiters nor Warren was entitled to indemnity from the other and dismissed the cross claims. The Beiters appeal the entire judgment. Warren concedes liability to Orange Bowl, but appeals the dismissal of her cross claim against the Beiters. We affirm in part and reverse and remand in part.

The material facts are undisputed. In 1976, Orange Bowl granted Robert L. Warren a franchise to operate an "Orange Bowl" fast food restaurant at Charlestown Square Mall in North Charleston, South Carolina. The parties consummated the transaction by executing a Franchise Agreement and a Sublease Agreement which incorporated the terms of a Master Lease of the franchise location between Orange Bowl and the owners of the Mall.

In 1980, Robert Warren assigned the franchise to his then wife, Lucy Warren. In 1982, Lucy Warren assigned the franchise to the Beiters. In 1984, the Beiters assigned the franchise to Stephen R. Amos. Orange Bowl consented to each of

---

[1] Robert L. Warren was never served with process and did not appear in the action. He is not a party to this appeal.

these assignments.

In November, 1985, Orange Bowl terminated the franchise when Amos defaulted on royalty, rental, and other payments then due. Orange Bowl itself assumed operation of the Charleston Square restaurant, as it was entitled to do under the Franchise Agreement. Afterwards, it commenced this action to recover the sums which Amos had not paid.

## I.

The first question on appeal is whether the Beiters are liable to Orange Bowl for the moneys not paid by Amos. We hold they are liable.

## A.

The Beiters argue that the original Franchise Agreement contained no term stating they would remain liable for all obligations assumed by the new franchise when they assigned the franchise.

An express term was unnecessary. As a matter of law, an assignor remains liable to the obligor for the assignee's defective performance, just as he would be liable for his own defective performance. *Baker v. Weaver*, 279 S. C. 479, 309 S. E. (2d) 770 (Ct. App. 1983).

In addition, the Beiters expressly agreed to remain liable after the assignment to Amos. In a letter agreement to the Beiters, dated May 15, 1984, Orange Bowl consented to the assignment on the following terms, among others:

> The Orange Bowl Corporation will consent to the assignment of your Franchise Agreement and Sub-Lease agreement to the above named buyer [Amos] upon the condition that the following are satisfied:
>
> 1. That Mr. & Mrs. Beiter continues [sic] to remain liable pursuant to the terms and conditions of the Franchise Agreement and the Sub-Lease Agreement. That Mr. Steven R. Amos expressly assume all of the liabilities and obligations contained in those agreements.

$$* \quad * \quad * \quad * \quad * \quad *$$

Both of the Beiters signed the letter agreement and returned it to Orange Bowl, indicating their assent to its terms.

The Beiters claim they should not be bound by the letter agreement because it was a unilateral attempt to impose new conditions on the transfer of the franchise. Their argument is without merit. They were already liable for the performance of their assignee as matter of law. Thus, the letter agreement imposed no new condition on them. Moreover, it was competent for the parties to agree to terms not found in the original contract as a reasonable condition for obtaining the obligor's consent to the assignment. Parties may always modify their agreements. *Fass v. Atlantic Life Insurance Co.*, 105 S. C. 107, 89 S. E. 558 (1916).

The Beiters also assert they should not be bound by the letter agreement because they signed it by mistake. This proposition is not raised by any exception. Consequently, we cannot address it. *Kneece v. Kneece*, 296 S. C. 28, 370 S. E. (2d) 288 (Ct. App. 1988).

### B.

In the alternative, the Beiters claim that Orange Bowl, by its conduct, released them from liability for a default by Amos. They make two arguments in support of this claim.

First, they assert the contract of sale with Amos expressly released them from further liability under the Franchise and Sublease Agreements. They argue that since Orange Bowl was aware of this provision in the contract of sale and consented to the assignment, it is estopped to deny the Beiters are released.

This argument is simply not supported by the facts. The contract of sale does not release the Beiters from any obligations under the Franchise and Sublease Agreements with Orange Bowl. The provision the Beiters rely on pertains to the unpaid balance on a purchase money promissory note which they gave Warren when they bought the franchise from her. It requires Amos to assume the obligation of the note and states that the Beiters will "in no way, shape, or form" be held liable for any future payments to *Warren.* This is a far cry from a release of obligations to *Orange Bowl.* It relates to a completely different obligation and a completely different obligor.

Second, the Beiters assert they are released because ▪ Orange Bowl failed to give them notice of Amos's October 1985 default so they could resume operation of the franchise. The Beiters argue that by terminating the franchise and directly operating the location itself, Orange Bowl breached the Franchise Agreement and deprived them of the right to cure the default. They maintain this breach waived any further liability they had under the Franchise Agreement or any other documents.

Again, the facts do not support the Beiters' argument. The Franchise Agreement permitted Orange Bowl to terminate the franchise if "the Franchisee shall fail to perform . . . any of the provisions required to be performed . . . by the Franchisee hereunder . . . and shall not remedy the same within seven (7) days after receipt of written notice to that effect from the Franchisor. . . ." The Beiters' argument is based solely on this contractual provision.

In October, 1985, the "Franchisee" was Amos, not the Beiters. The Beiters had transferred their entire interest in the Franchise Agreement to Amos in 1984. Nothing in the Franchise Agreement or the documents of assignment reserved a right in the Beiters to receive notice or to resume the franchise if their assignee defaulted. Thus, as the circuit court found, Orange Bowl did not breach the notice and right-to-cure provision in the Franchise Agreement.

Moreover, when Orange Bowl gave the Beiters notice of a previous default by Amos in 1984, the Beiters advised Orange Bowl, through their attorney, that they did not intend to remain liable under the Franchise Agreement. Thenceforth, as the Beiters had already taken the position that they would not be liable to Orange Bowl if Amos defaulted, Orange Bowl was excused from any duty to give them notice. The law does not require a party to perform a useless act. *United States v. Conti,* 64 F. Supp. 187 (D. Mass. 1946), *aff'd,* 158 F. (2d) 581 (1st Cir. 1946); *DeFee v. Kaley,* 119 Ga. App. 538, 167 S. E. (2d) 758 (1969).[2]

---

[2] In fact, the Beiters were notified of the October, 1985, default promptly after Orange Bowl terminated the franchise. They made no attempt to cure the default by tendering the money due. Neither did they ask Orange Bowl to reinstate the franchise under their management. Instead, they took the position, as they had after the 1984 default, that they were in no way liable to Orange Bowl.

For the reasons stated, we affirm the circuit court's judgment on the issue of the Beiters' liability to Orange Bowl.

## II.

The next question is whether Warren is bound to indemnify the Beiters for the amount of Orange Bowl's judgment. The simple answer is that Warren is not so bound because she did not agree to such an indemnity.

To establish their right to indemnity, the Beiters rely on a clause in a document titled "AGREEMENT CONSENTING TO ASSIGNMENT AND ASSUMPTION OF OBLIGATIONS," which Warren, the Beiters, and Orange Bowl signed when the franchise was transferred to the Beiters. The clause states that in consideration of Orange Bowl's consent to the assignment, Warren "agrees to remain liable for a period of four years ... under the FRANCHISE AGREEMENT and the SUBLEASE AGREEMENT according to the terms, conditions and covenants contained in the FRANCHISE AGREEMENT and the SUBLEASE AGREEMENT...."

No terms, conditions, or covenants in the Franchise and Sublease Agreements require Warren to indemnify her assignees, the Beiters. It is clear from the context that Warren's promise to remain liable on the Agreements runs to Orange Bowl as a *quid pro quo* for its consent to the assignment. It confers no benefit on the Beiters. Accordingly, we affirm the circuit court's dismissal of the Beiters' cross claim for indemnity.

## III.

The final question on appeal is whether the Beiters are bound to indemnify Warren for the amount of Orange Bowl's judgment.

When the Beiters purchased the franchise from Warren in 1982, they expressly agreed to indemnify her against any loss she might incur as a result of their breach of any obligation they assumed to Orange Bowl under the Franchise and Sublease Agreements.[3] This indemnity provision

---

[3] The Beiters, in their turn, bargained for and received an identical promise of indemnity from Amos when they sold the franchise to him.

was triggered when Warren became liable for Amos's failure to pay royalties, rents, and other charges due under the Agreements.

The Beiters do not deny they agreed to indemnify Warren. Instead, they assert that Warren later waived her right to indemnity when she consented to the assignment of the franchise to Amos. To understand their argument, some additional facts are necessary.

The Beiters purchased the franchise from Warren for $81,000 in 1982. They paid the purchase price by giving Warren $10,000 in cash and two secured promissory notes for the balance. When they sold the franchise to Amos in 1984, they entered into a similar arrangement with him. Amos agreed to purchase the Beiters' rights under the Franchise and Sublease Agreements for $75,294. The contract of sale called for him to pay $20,000 in cash and to assume payment of the Beiters' outstanding note to Warren. The balance on the note was approximately $53,484 at that time. The contract of sale provided that once Amos assumed the note, the Beiters would no longer be liable "in any way, shape, or form" for future payments on the note. Contemporaneously, Warren signed an affidavit in which she agreed that in the event of default on the note, she would institute legal proceedings against Amos as the responsible party on the note. Implicit in the affidavit was the understanding that the Beiters would no longer be obligated to Warren on the note.[4] The affidavit says nothing about obligations to Orange Bowl under the Franchise and Sublease Agreements.

The Beiters rely solely on the affidavit to support their claim that Warren waived her right to indemnity under the Franchise Agreement. It is clear, however, that the affidavit relates only to the promissory note. It does not release the Beiters from any obligations under the Franchise Agreement or their contract of sale with Warren. Thus, the circuit court erred in dismissing Warren's cross claim for indemnity.

---

[4] When the note went into default, Warren brought an action to collect the debt solely against Amos. In accordance with the understanding that the Beiters would no longer be liable on the note, Warren did not join them as defendants in the action, although they are the makers of the note. Thus, Warren has faithfully abided by the understanding.

We, therefore, reverse the judgment dismissing Warren's cross claim and remand for entry of judgment requiring the Beiters to indemnify her for any sums she pays in satisfaction of Orange Bowl's judgment against her.

Affirmed in part, reversed and remanded in part.

SHAW and CURETON, JJ., concur.

