**In re Claude Joseph NOLETTO, Jr., Terry Lynn Noletto, Debtors.**

**In re John FAIR Debtor.**

**Claude Joseph Noletto, Jr., Terry Lynn Noletto, Plaintiffs,**

**and**

**John H. Fair, Intervening Plaintiff,**

**v.**

**NationsBanc Mortgage Corporation, Defendant.**

**Bankruptcy Nos. 98–13813–MAM– 13, 98–13142–WSS–13.**

**Adversary No. 99–1120.**

United States Bankruptcy Court, S.D. Alabama.

July 25, 2001.

Steve Olen, Steven L. Nicholas, Donald J. Stewart, Mobile, AL, for Plaintiffs.

John Culver, Charlotte, NC, Jeffery J. Hartley, Mobile, AL, for Defendants.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT EXCEPT AS TO INSPECTION FEES AND GRANTING DEFENDANT'S MOTION FOR CLASS CERTIFICATION

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the motion of NationsBanc Mortgage Corporation for summary judgment and class certification. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to issue a final order. For the reasons indicated below, the Court is denying the motion of defendant for summary judgment except as to inspection fees and granting the motion for class certification.

NationsBanc was told by one bankruptcy judge in the Northern District of Texas that no attorneys fees would be allowed by him to NationsBanc for the preparation and filing of proofs of claim. Another bankruptcy judge in the same district allowed a fee in a case.

FACTS

John Fair filed a chapter 13 case on September 2, 1998 in this Court. Prior to that he and his wife had borrowed $31,150 from First Union Mortgage Corporation on March 23, 1990 to purchase a home. NationsBanc serviced the loan from some date before the bankruptcy filing until November 2, 1998. The Fairs were current on their payments on their mortgage when Mr. Fair filed bankruptcy. Consequently, their plan did not provide for payment of any prepetition mortgage arrearages in the plan or outside of it.

NationsBanc filed a proof of claim on November 4, 1998. The proof of claim included in the balance listed as owed a $125 attorneys fee for the preparation and filing of the proof of claim. There was no breakdown of the total amount shown as owed. The proof of claim stated that no arrearage was included in the claim.

On November 2, 1998, NationsBanc transferred its servicing rights of the Fairs' loan to Midland Mortgage. No notice of the transfer of the claim was ever filed with the Court. At the time of the transfer, NationsBanc had not received any invoice from the attorneys who filed

the proof of claim and had not posted the fee to the account. John Fair is a coal machine operator at the Alabama State Docks. He has a ninth grade education. He is generally knowledgeable about the lawsuit, although he is not a sophisticated person who understands all of the suit's intricacies. Mr. Fair's bankruptcy was caused, at least in part, by his gambling. He describes himself as a compulsive gambler.

Mr. Fair's bankruptcy schedules had some inaccuracies, none of which affected his claim against NationsBanc. His health is not excellent but he continues to work steadily at the docks.

### LAW

The Court will address the summary judgment issues first and then the class certification ones. If summary judgment were granted as to Mr. Fair's underlying case, then the class certification issue would be moot.

Defendant NationsBanc filed a Supplemental Affidavit on June 21, *2001,* less than 24 hours before the hearing. The plaintiff's counsel did not see the affidavit until the hearing date. The Court had ordered all affidavits of defendant to be filed by June 15. The Court concludes that the affidavit does not change the result and so admits it for purposes of consideration of the summary judgment motion.

### A. Summary Judgment

This is a motion for summary judgment filed by the defendant pursuant to Fed. R. Bankr.P. 7056. Rule 7056 states that the Court shall grant summary judgment to the moving party if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056(c). The moving party bears the burden of

proving that there is no issue of material fact. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson* at 249, 106 S.Ct. 2505. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All inferences are resolved in favor of the nonmoving party. *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844 (11th Cir.2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

■ Defendant asserts that the standard is more precise than the above paragraph states. The Court must resolve not all inferences in favor of the nonmoving party, but rather all "reasonable" inferences only. See, e.g., *Graham v. State Farm Mutual Ins. Co.,* 193 F.3d 1274, 1282 (11th Cir.1999); *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246–47 (11th Cir.1999). First, the Court used the reasonable inference standard in prior opinions and will do so in this case. Second, as shown below, using this standard, the Court concludes that summary judgment should be denied.

1.

■ NationsBanc asserts that Fair has no claim against NationsBanc so the complaint should be dismissed. NationsBanc transferred its servicing rights to Midland Mortgage after the proof of claim was mailed to the Court indicating Fair's liability to it. Due to the transfer, NationsBanc did not approve payment of, or pay, the $125 attorneys fee itself nor did it post the

charge to Fair's account. Basically, NationsBanc claims it can now avoid liability by not holding the servicing rights during the crucial period of the proof of claim filing and posting process. The debtor asserts that this "Pontius Pilate" defense is absurd. NationsBanc was the servicer for part of the process at least and there is no evidence in the record about what "transfer" of the servicing rights means on a legal basis.

■ The Court concludes that "a mere assignment does not release the assignor from his or her obligations to the other party under the assigned contract." Assignments, § Am.Jur.2d 2000; *Vetter v. Security Continental Ins. Co.*, 567 N.W.2d 516, 521 (Minn.1997) ("the original obligor may not divest itself of liability without the consent of the obligee"); *Orange Bowl Corp. v. Warren*, 300 S.C. 47, 386 S.E.2d 293, 295 (1989) ("an assignor remains liable to the obligor for the assignee's defective performance, just as he would be liable for his own defective performance"); *Baker v. Weaver*, 279 S.C. 479, 309 S.E.2d 770, 772 (App.1983) (" Under settled contract law, a person may not simply delegate a duty to another and thereby extinguish his own liability to fully perform that duty.").[1] The treatise continues by stating:

> Observation: If this were not true, obligors could free themselves of their obligations by the simple expedient of assigning them.

And so it would be in this case. NationsBanc could free itself from all responsibility for the process it set in motion by simply transferring its contract midstream.

The Court concludes that the claims against NationsBanc should not be dismissed. First, there has been no evidence of any transfer of the claim filed with this Court pursuant to Fed. R. Bankr.P. 3001(e) ("If a claim ... has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee."). Second, unless Fair consented to transfer of NationsBanc's liability for the filing of a proof of claim without disclosure of the inclusion of an attorneys fee and consented to NationsBanc no longer being liable for the process which leads to improper posting of a fee to his account, then NationsBanc remains liable. It is NationsBanc's responsibility to seek to add third party defendants who are responsible to NationsBanc for the posting and collection of the fee. This is particularly true where, as seen before in these cases, a debtor, the Court and creditor are not informed of something, in this case the transfer of the claim as required by the Bankruptcy Rules.

NationsBanc also asserts that Mr. Fair should be suing the owner of the loan and not the servicer. However, this rings hollow. NationsBanc filed the proof of claim, hired the attorney to prepare it, and either NationsBanc or its transferee, if it followed normal procedures, paid the fee and posted it to Fair's account. To say that NationsBanc is not responsible for its own actions is wrong. At least, for purposes of summary judgment, NationsBanc has produced no evidence to show it is not liable for its own procedures in servicing the loan.

### 2.

■ NationsBanc asserts that 11 U.S.C. § 506(b) does not apply to its fees since Fair did not propose to pay the fees in his

---

1. The U.C.C., which is not applicable to this case, would dictate a similar result. U.C.C. § 2–210(1) (1989) ("No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.").

plan. The Court's order of December 29, 2000 concluded that postpetition preconfirmation attorneys fees "must be disclosed and claimed in the proof of claim or separate fee application if a chapter 13 debtor proposes to pay all preconfirmation mortgage arrearages in his or her plan." *In re Noletto,* 281 B.R. 36, 41 (Bankr.S.D.Ala. 2000). Fair did not propose to pay any prepetition or postpetition preconfirmation arrearages because he believed he was current in his payments to NationsBanc—which he was.

Therefore, unless NationsBanc's proof of claim disclosed arrearages of some kind, Fair had no reason to amend his plan to treat them. For NationsBanc to argue that Fair should have provided for arrearages "just in case" wrongly puts the burden on the debtor to divine what fees a creditor might charge and to propose a plan including treatment for nonexistent eventualities. The debtor only has to treat the claims that are filed. Fair did that. NationsBanc cannot claim Fair lacks a claim when it did not disclose its fee.

### 3.

 NationsBanc asserts that since all it did was file a proof of claim, it cannot have violated the automatic stay. It is correct that this Court has concluded that filing a proof of claim containing an attorneys fee does not violate this stay. However, for the reasons stated at section A.1. above, the fact that NationsBanc transferred its servicing contract before the payment of the fee to the attorneys it hired and before posting of the fee to the account are meaningless. Liability to the debtor remains in the assignor (as well perhaps as the assignee), even if liability can be apportioned between assignor and assignee. NationsBanc has not presented evidence concerning whether the assignee expressly or impliedly assumed the obligation. Even if NationsBanc specifically disclaimed liability in the assignment documents, the disclaimer can not be asserted against a nonconsenting third party. *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420 (7th Cir.1993). The debtor need not sort the liability for the assignor and assignee. "Assignment makes the assignee another obligor; it does not let the assignor off the hook." *Id.* at 1425.

### 4.

NationsBanc asserts it should have summary judgment as to inspection fees. There is no evidence in the record that any inspection fees were charged to Mr. Fair. The debtor did not dispute summary judgment as to this issue. The Court concludes summary judgment should be granted as to inspection fees.

### 5.

 NationsBanc asserts that Fair has not produced any evidence to establish a claim for punitive damages. Punitive damages require "clear and convincing evidence that the defendant consciously or deliberately engaged" in wrongful conduct. Ala.Code § 6–11–20 (1975); See, e.g., *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 211 B.R. 970 (N.D.Ala.1997). The conduct must be intentional or "carried on with a reckless or conscious disregard of the rights ... of others." Ala. Code § 6–11–20 (1975). In this case, a bankruptcy judge in Texas in 1997 ruled that NationsBanc could not charge attorneys fees at all for preparation and filing of a proof of claim. The judge stated:

Recently the court conducted a show cause hearing over a like assessment of "bankruptcy attorney's fees" by NationsBanc. The officer who testified for NationsBanc stated that the $125 repre-

sented funds paid to an outside law firm to prepare a claim in the bankruptcy case. The preparation of a claim is a ministerial act for which no attorney's fees should be charged against a debtor. Certainly, a creditor is free to have an attorney to prepare the claim, but the cost of that preparation cannot be passed on to the debtor without specific authorization from the court. The court sanctioned NationsBanc at the prior hearing. This order will be served on the officer who appeared at that hearing.

*In re Allen,* 215 B.R. 503, 504 (Bankr. N.D.Tex.1997). After that date, Debtor alleges that NationsBanc persisted in adding the fee to debtor's accounts nationwide. The facts known to this Court to date indicate this is true.

At the conclusion of the trial in this case, this Court may or may not award punitive damages based on this one judge's warning. However, the ruling in the *Allen* case coupled with NationsBanc's continued pursuit of such fees "without specific authorization from the court" creates a genuine issue of material fact as to whether NationsBanc intentionally violated that order and/or the Bankruptcy Code.

### 6.

NationsBanc asserts that a declaratory judgment against it is inappropriate in this case because NationsBanc cannot engage in any improper practices or procedures in the future or turn over any fees collected or reverse the posting of any fees to debtors' accounts. NationsBanc argues that since it is no longer servicing the debt, it cannot be enjoined and Fair has no standing to pursue a claim against NationsBanc because it has not and will not and cannot harm him in the future and does not handle the accounts. So it cannot refund money or reverse posting of fees. This argument is another variation on the assignment theme in part A.1. and A.3. above.

The debtor asserts that he has a right to hold NationsBanc liable for the acts of its successor in interest and liable for its own acts in commencing the process. For the reasons stated in part A.1. and A.3., the Court agrees with the debtor.

### B. Class Certification

#### 1

This Court considered the questions of class certification when the Nolettos were the proffered class representatives. *Noletto v. NationsBanc Mortgage Corp. (In re Noletto),* 281 B.R. 36 (Bankr.S.D.Ala. 2000). The Court granted certification of the class and then reconsidered the decision determining instead to "[vacate] the class certification until the standing and adequacy issues can be reviewed as to the proposed intervenor [Mr. Fair]." *Id.,* Order Denying in Part and Granting in Part NationsBanc Mortgage Corp.'s Motion for Reconsideration (Bankr.S.D.Ala. February 8, *2001* ). The Court will not repeat what was already stated in the December 29, 2000 order. It is incorporated by reference. The Court will address each of the issues raised in NationsBanc's opposition to the class certification.

#### 2.

NationsBanc asserts that John Fair lacks standing to pursue any claims because NationsBanc transferred its servicing rights after filing a proof of claim containing an attorneys fee but before the fee was paid or posted to Fair's account. NationsBanc argues that it therefore did not cause any injury to Fair. As stated in Part A.1. and A.3. above, NationsBanc cannot escape liability by transferring the

contract midstream. NationsBanc remains liable for its assignee's performance unless Fair consented to the assignment. There is no evidence of consent—or even knowledge of—the transfer.

### 3.

NationsBanc asserts that Fair is not an "adequate" class representative as required by Fed. R. Bankr.P. 7023(a)(4). It requires that a class representative must "fairly and adequately protect the interests of the class." This Court has previously stated that it will consider: (1) the representative's role as fiduciary for the class; (2) his interest in vigorously pursuing the case; (3) his general knowledge about the case; (4) his honesty and credibility; and (5) his lack of relation to class counsel. *Sheffield v. Homeside Lending, Inc.*, 281 B.R. 24 (Bankr.S.D.Ala. 2000). The Court concludes that Fair possesses these qualities. He is not a perfect man or a perfect class representative but perfection is not required. Case law indicates that "a class representative is not required to understand the meaning of complex legal terms or to direct litigation strategies. A representative should ... have some awareness of the basic facts underlying a suit." *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421, 426 (E.D.La.1997). John Fair has the requisite understanding. There are cases cited in the Byes case, *id.*, which found class representatives inadequate who were like John Fair in some ways. John Fair has not read the entire complaint; he was not aware what prior hearings had been held in the case; he is not intimately familiar with all of the legal grounds or elements of the case; and he is not familiar with all of the facts except his own. *Id.* at 426. He has a basic understanding of the heart of the case—he has been improperly charged a $125 attorneys fee.

The Supreme Court in *Surowitz v. Hilton Hotels, Corp.*, stated:

> In fact the opinion of the Supreme Court of Appeals indicates in several places that a woman like Mrs. Surowitz, who is uneducated generally and illiterate in economic matters, could never under any circumstances be a plaintiff in a derivative suit ...
>
> We cannot construe Rule 23 or any other one of the Federal Rules as compelling courts to summarily dismiss, without any answer or argument at all, cases like this where grave charges of fraud are shown by the record to be based on reasonable beliefs growing out of careful investigation. The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

383 U.S. 363, 372–73, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). Most courts, following the *Surowitz* rationale, have overruled challenges to adequacy based on literacy and sophistication unless other negative factors were present. Newberg on Class Actions (3d) (1992) § 3.34, Plaintiff's Status, p. 3–165–166.

NationsBanc asserts that other negative factors are present in this case beyond John Fair's education and sophistication. His gambling problem and his less than

fully accurate schedules raise impediments to this representative status. The court concludes these matters, if true, are not grounds to discard Mr. Fair as a class representative. These issues have nothing to do with his claim against NationsBanc. Such problems would be a concern if they impacted this suit, but they do not. They create no conflict for him with other plaintiffs. They are personal issues. The fact that Mr. Fair's petition and schedules do not match his tax returns and that the schedules had errors is not uncommon. They do not make Mr. Fair's testimony about his mortgage less credible.

## CONCLUSION

The Court concludes that John Fair's claim does state a case as to which there is a genuine issue as to material facts and summary judgment should be denied. The Court also concludes that class certification of a Fed. R. Bankr.P. 7023(b)(2) is appropriate for the same reasons as were state in the prior class certification orders in the cases of *In re Sheffield*, 281 B.R. 24 (Bankr.S.D.Ala.2000) and *In re Noletto*, 281 B.R. 36 (Bankr.S.D.Ala.2000).

IT IS ORDERED:

1. The Motion of NationsBanc Mortgage Corporation for summary judgment is DENIED except that it is GRANTED as to inspection fees only.

2. The Motion for class certification of a Fed. R. Bankr.P. 7023(b)(2) class is GRANTED.

3. Plaintiff's and defendant's counsel shall each submit a proposed class definition by August 20, *2001* so that the Court may issue an order specifically defining the certified class.