554 S.E.2d 437

**Willie Mathis NEWTON, Appellant,**

v.

**PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, Respondent.**

**No. 3395.**

Court of Appeals of South Carolina.

Heard Sept. 13, 2001.

Decided Oct. 29, 2001.

Deborah R.J. Shupe, of Louthian & Louthian, of Columbia, and Robert J. Harte, of Aiken, for appellant.

J.R. Murphy and J.J. Gentry, both of Murphy & Grantland, P.A., of Columbia, for respondent.

GOOLSBY, Judge:

By this declaratory judgment action, William Mathis Newton seeks reformation of an automobile liability policy issued him by Progressive Northwestern Insurance Company to in-

clude uninsured motorist coverage. The trial court granted Progressive summary judgment. Newton appeals. We affirm.

## FACTUAL/PROCEDURAL HISTORY

On October 13, 1996, Progressive issued Newton, a resident of Augusta, Georgia, an automobile liability insurance policy. Newton purchased the policy through the Affordable Insurance Agency in Martinez, Georgia. Because he rejected uninsured motorist coverage, which is optional in Georgia, Progressive issued its policy without uninsured motorist coverage.

Several months later, on March 3, 1997, Newton was involved in an automobile accident while traveling in South Carolina. The at-fault driver of the other car had no liability insurance. At the time of the accident, Newton was still covered under the policy issued by Progressive.

According to Newton's brief before this court and as required by this state's Motor Vehicle Financial Responsibility Act,[1] Newton received a form requesting verification of liability insurance coverage.[2] Progressive completed the form for Newton, verifying he had automobile liability insurance on the date of the accident.

Newton brought suit against the at-fault driver. He also served Progressive. The latter, however, denied coverage because the policy issued Newton did not provide uninsured motorist coverage.

Newton later brought the instant action, contending the Motor Vehicle Financial Responsibility Act required reformation of his policy to include the minimum uninsured motorist coverage required by South Carolina law. When granting Progressive's motion for summary judgment, the trial court held the Motor Vehicle Financial Responsibility Act did not require reformation of Newton's policy.

---

1. S.C.Code Ann. §§ 56–9–10 to –630 (1991).

2. *Id.* § 56–9–350.

## LAW/ANALYSIS

■ Newton appeals, arguing because South Carolina law required Newton to supply the Department of Public Safety with proof of financial responsibility in connection with the accident [3] and because Progressive undertook to verify liability coverage for him, the terms of the policy had to be reformed to comply with South Carolina liability policy requirements. In support of his argument, Newton points to the following policy provision in effect at the time of the accident:

> When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as Proof of Financial Responsibility.

(Emphasis in original).

At most, by completing the request form given Newton pursuant to S.C.Code Ann. section 56–9–350 (1991), Progressive would have merely confirmed that Newton had liability insurance coverage on his vehicle and could answer to a judgment obtained by a third party up to the policy limits. If this action had the effect of rendering Progressive liable to Newton for uninsured motorist coverage and thus having to pay Newton any amount he obtained by way of a judgment, Newton would have to return the money under the clear terms of the policy. The reason is because Progressive would not have had to make the payment if it had not verified the policy as proof of financial responsibility to the State of South Carolina. The law requires a lot of things, but doing a useless act is not one of them [4]—at least ordinarily, it is not.

---

**3.** S.C.Code section 56–9–350 (1991) provides in pertinent part:

The ... owner of a motor vehicle involved in an accident resulting in property damage of four hundred dollars or more, or in bodily injury or death, must be furnished a written request form at the time of the accident ... by the investigating officer for completion and verification of liability insurance coverage....

The completed and verified form must be returned by the ... owner to the Department within fifteen days from the date the form was delivered by the officer....

**4.** *Orange Bowl Corp. v. Warren*, 300 S.C. 47, 386 S.E.2d 293 (Ct.App. 1989).

Newton cites S.C.Code Ann. section 56–9–351 (Supp.2000)[5] in support of his · position ·that Progressive's verification of liability insurance coverage for him added uninsured motorist coverage to his policy. All the statute does, however, is compel the creation of a fund from which one might satisfy a judgment obtained against an operator or owner for damages resulting from a motor vehicle accident involving the operator's or owner's motor vehicle.

Newton maintains that Progressive certified proof of financial responsibility pursuant to S.C.Code Ann. section 56–9–560 (1991).[6] The record before us shows no such thing occurred. For instance, nothing in the record shows that Progressive executed a power of attorney that designated the Department as its agent to accept service of process or that it agreed in writing that its policy would be construed to conform to South Carolina law regarding financial responsibility.

---

**5.** S.C.Code Ann. section 56–9–351 (Supp.2000) provides in pertinent part:

Within sixty days of receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in the amount of two hundred dollars or more, ... [i]f the ... driver is a nonresident, the privilege of operating a motor vehicle within this State ... is suspended unless the ... driver or owner, ..., deposits security in a sum not less than two hundred dollars or an additional amount as the department may specify that will be sufficient to satisfy a judgment that may be recovered for damages resulting from the accident which may be recovered against the operator or owner.

**6.** S.C.Code Ann. section 56–9–560 (1991) states in pertinent part:

The nonresident owner of a motor vehicle not registered in this State may give proof of financial responsibility by filing with the Department written certificates of an insurance carrier authorized to transact business in the state in which the motor vehicle ... described in the certificate is registered ..., provided the certificate otherwise conforms with the provisions of this chapter, and the Department shall accept it upon condition that the insurance carrier complies with the following provisions with respect to the policies certified:

(1) The insurance carrier shall execute a power of attorney authorizing the Department to accept service on its behalf of notice or process in any action arising out of a motor vehicle accident in this State; and

(2) The insurance carrier shall agree in writing that the policies shall be construed to conform with the laws of this State relating to the terms of motor vehicle liability policies issued in this State.

Moreover, section 56–9–560 is not applicable in the instant case. Progressive need not have certified proof of financial responsibility pursuant to section 56–9–560. Article 5 of Chapter 9 of Title 56 within which section 56–9–560 falls concerns those against whom judgments have already been obtained, residents and nonresidents alike.[7] Nothing in the record shows that Newton had been involved in an earlier accident in this state and had failed to satisfy a judgment prior to the accident at issue here. Similarly, the record does not indicate Newton had been in an accident and failed to satisfy a judgment after the effective date of submitting proof of his ability to respond to damages for liability on account of an accident arising out of the ownership or use by him of a motor vehicle.[8]

Perhaps the biggest hurdle Newton faces is the limited reach of S.C.Code Ann. section 38–77–150 (Supp.2000), the statute that mandates uninsured motorist coverage be included in an "automobile insurance policy." S.C.Code Ann. section 38–77–30(10.5) (Supp.2000) expressly defines the latter term as used in Chapter 77 to mean "a policy ... issued or delivered in this State...." S.C.Code Ann. section 38–77–30(1) (Supp.2000) further limits "automobile insurance" to "liability insurance, including ... uninsured motorist coverage, ... written or offered by automobile insurers." S.C.Code Ann. section 38–77–30(2) (Supp.2000) defines the term "automobile insurer" as "an insurer licensed to do business in South Carolina and authorized to issue automobile insurance policies."

Section 38–77–150 does not affect policies issued in other states, including Georgia. A policy issued and delivered

---

**7.** *See e.g.,* S.C.Code Ann. § 56–9–410 (1991) (requiring reports of unpaid judgments to be made to the Department); *id.* § 56–9–420 (requiring the Department to report unpaid judgments against nonresidents to the nonresident's home state).

**8.** *See Reyes v. Travelers Ins. Co.,* 135 Ill.2d 353, 142 Ill.Dec. 787, 553 N.E.2d 301 (1990) (holding Illinois resident involved in an accident in Indiana was not subject to Indiana's Financial Responsibility law because he had not been involved in a prior accident in that state); *cf.* S.C.Code Ann. § 56–9–20(11) (Supp.2000) (defining "proof of financial responsibility" to mean the "ability to respond to damages for liability ... on account of accidents occurring after the effective date of such proof, arising out of the ownership ... or use of a motor vehicle....").

outside of South Carolina is not "a policy issued or delivered in this State." As noted above, Progressive issued its policy in the State of Georgia to a Georgia resident through a Georgia insurance agent.

█ Furthermore, the policy in question is not one written or offered by a licensed South Carolina insurer. Progressive, a licensed Georgia insurer, wrote or offered it. "The fact that an accident which is within the risk covered by an accident policy occurred in a certain state does not make the contract one of that state." [9]

The trial court, therefore, properly held this State's financial responsibility law did not require the reformation of the Georgia policy to include uninsured motorist coverage.[10]

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.

---

9. 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 24.15, at 24–24 (1997).

10. *See Galford v. Nicholas,* 224 Md. 275, 167 A.2d 783 (1961) (holding the law that controls is the law where the automobile insurance contract was entered into); *accord Cotton v. State Farm Mut. Auto. Ins. Co.,* 540 So.2d 1387 (Ala.1989); *Fortune Ins. Co. v. Owens,* 351 N.C. 424, 526 S.E.2d 463 (2000).